IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHANNAN L. GARCIA,

    Plaintiff,

vs.

COMPLETELY KIDS,

    Defendant.

8:14CV119

MEMORANDUM AND ORDER

   This matter is before the court on Defendant's Motion for Protective Order, ([Filing No. 27](#)). For the reasons stated below, Defendant's Motion will be granted.

## STATEMENT OF FACTS

   On October 5, 2012, Plaintiff Shannan Garcia was terminated from her employment with Defendant Completely Kids. Prior to terminating Plaintiff, Defendant consulted with its legal counsel, Margaret Hershiser ("Hershiser") who is Defense counsel in the current litigation.

   The week preceding Plaintiff's termination, Plaintiff's supervisor and Director of Programs, Carla O'Donnell-Rizzo ("Rizzo"), received a complaint from a staff member regarding Plaintiff's behavior. ([Filing No. 31-3 at CM/ECF p. 11](#)). Rizzo informed the executive director of Completely Kids, Penny Parker ("Parker"), of the complaint and Parker instructed Rizzo to consult with legal counsel. ([Filing No. 31-3 at CM/ECF p. 11](#)). The decision to consult legal counsel at Completely Kids was made by Parker. ([Filing No. 29-2 at CM/ECF p. 7](#)). Parker decided legal counsel should be consulted to ensure Completely Kids followed all the appropriate steps in case Plaintiff was to be terminated. ([Filing No. 29-2 at CM/ECF pp. 7–8](#)). Parker testified Plaintiff's medical condition had no effect on her decision to consult legal counsel. ([Filing No. 29-3 at CM/ECF p. 8](#)).

Rizzo continued to investigate the complaint, and first contacted counsel regarding Plaintiff's possible termination during the week the termination occurred. (Filing No. 31-3 at CM/ECF pp. 11–12 & 23). While Rizzo recommended Plaintiff's termination, the ultimate decision to terminate Plaintiff was made by Parker. (Filing No. 31-3 at CM/ECF p. 10; Filing No. 31-4 at CM/ECF pp. 7–8).

On January 13, 2014, Plaintiff filed her Complaint alleging claims of Family and Medical Leave Act retaliation and Americans with Disabilities Act discrimination and retaliation. In its Answer, Defendant asserted the good faith affirmative defense, stating "[a]ll of Completely Kids' actions with respect to Plaintiff were made in good faith." (Filing No. 7 at CM/ECF p. 9).

Plaintiff deposed Rizzo. In her deposition, Rizzo alluded to her consultation with counsel in response to several questions. She mentioned counsel twice when she was asked about the content of her meeting with Parker the day before Plaintiff's termination, saying she "updated [Parker] on my advice from counsel[,]" (Filing No. 31-3 at CM/ECF p. 11) and "I told [Parker] . . . what legal counsel told me to do[.]" (Filing No. 31-3 at CM/ECF p. 23). Rizzo also mentioned counsel at several points when she was questioned regarding the supervisory notes of Mr. Heaston, Plaintiff's direct supervisor, and whether counsel was ever sent the notes.[1] (Filing No. 31-3 at CM/ECF pp. 6, 7, 8, 11, & 22–23)

During Defendant's Rule 30(b)(6) deposition, Plaintiff asked Parker what facts support Completely Kid's good faith defense. Parker responded "I believe we were accommodating Ms. Garcia. We did everything to support her and what she was trying to do to recover from her illness. And to me that constitutes good faith." (Filing No. 31-4 at CM/ECF p. 11). Plaintiff next asked if "part of the bases . . . with regard to your good-faith defense is that you consulted counsel with respect to her termination?" Parker responded

---

[1] In accordance with Rule 30(e), Rizzo has subsequently clarified and corrected some of her answers in connection to this line of questioning. The court is taking both set of answers under consideration for this motion.

"yes." ([Filing No. 31-4 at CM/ECF p. 12](#)).[2] Plaintiff's counsel attempted to advance this line of questioning by asking specific questions regarding the type of legal advice received and relied upon by the defendant. ([Filing No. 31-4 at CM/ECF p. 12](#)). Defense counsel objected and after a discussion between counsel, defense counsel ordered Parker not to answer the questions concerning the advice sought and received from counsel. ([Filing No. 31-4 at CM/ECF pp. 12–13](#)). The parties agreed to defer their discussion of such matters.

In November of 2015, the topic was again approached when Plaintiff expressed a desire to depose Hershiser and to obtain copies of communications between Completely Kid's representatives and Koley Jessen P.C., L.L.O. ("Koley Jessen"). Plaintiff forwarded the proposed subpoena to defense counsel on November 16, 2015, to facilitate discussions prior to serving it. Within the proposed subpoena, Plaintiff seeks

1. All emails, text messages, letters, notes, memoranda, voicemails and any other documents that contain or mention or relate to any advice or recommendations you gave Completely Kids, Penny Parker, Carla Rizzo, or Bill Heaston regarding Shannan Garcia's requests for accommodation, requests for medical leave/FMLA leave, request to attend a conference in California in April of 2012 despite her medical condition; complaints of disability discrimination . . . and/or Shannan Garcia's performance, discipline or termination or whether Completely Kids should counsel, discipline or terminate Shannan Garcia. Said request is limited to dates on and/or prior to Ms. Garcia's termination on October 5, 2012. and

2. All emails, text messages, letters, notes, memoranda voice mails from representatives of Completely Kids, and other documents on which you based or memorialized your understanding of the basis for Ms. Garcia's request for accommodation, requests for medical leave/FMLA leave, request to attend a conference in California in April of 2012 despite her medical condition; complaints of disability discrimination . . . and/or Ms. Garcia's performance or the basis for discipline/counseling/termination. Said request is limited to dates on and/or prior to Ms. Garcia's termination on October 5, 2012.

---

[2] Parker referenced the consultation with counsel one other time in her deposition. She was asked "And is Ms. Rizzo the only person that you spoke with in regard to Ms. Garcia's termination?" And she answered "We did speak with the attorney." ([Filing No. 31-4 at CM/ECF p. 8](#)).

([Filing No. 29-2 at CM/ECF p. 4](#)).  The parties thereafter held a discovery conference with the court on December 15, 2015.  The court advised the parties to file formal motions for the court to consider.  Defendant filed this motion arguing that the information sought is protected by the attorney-client privilege which has not been waived.  Plaintiff argues the defendant impliedly waived any privilege by asserting reliance on the advice of counsel as a factual basis for its good faith defense.

ANALYSIS

The court may issue a protective order to prevent or limit discovery where "'justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  [Schoffstall v. Hendersen, 223 F.3d 818, 823 (8th Cir. 2000)](#) (quoting [Fed. R. Civ. P. 26(c))](#).  This Court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.  [Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)](#).

The defendant is seeking to protect information that is (or has been) covered by the attorney-client privilege.  The attorney client privilege is the oldest and "perhaps the most sacred" of all recognized privileges.  [Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)](#); [In re Grand Jury Proceedings, 162 F.3d 554, 556 (9th Cir. 1998)](#) (citations omitted). The purpose of the privilege is to encourage "full and frank communication between attorneys and their clients."  [Upjohn, 449 U.S. at 389](#).  The privilege may be waived expressly or waived impliedly.  [Sedco International, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)](#).  "An implied waiver occurs where the client has placed in issue a communication which goes to the heart of the claim in controversy."  [Union County v. Piper Jaffray & Co. Inc. 248 F.R.D. 217, 220 (S.D. Iowa 2008)](#).  Waiver may also be implied by "conduct making it unfair for a client to invoke the privilege."  [Id.](#)[3]

---

[3] The parties dispute whether the test outlined in Shelton v. American Motors Corp., should be the standard applied in this motion.  Without discussing the merits of

4

Due to the great significance attached to the attorney-client relationship, courts must proceed with caution when finding an implied waiver of the attorney-client privilege; the analysis is fact intensive and must be determined on a case-by-case basis. See United States v. Desir, 273 F.3d 39 (1st Cir. 2001); see also United States v. Doe, 219 F.3d 175, 183, 185 (2d Cir. 2000). Waiver "should not be applied cavalierly." Doe, 219 F.3d at 186. In determining whether there has been an implied waiver, two elements must be examined: (1) implied intention and (2) fairness and consistency. Sedco, 683 F.2d at 1206.

Courts have found implied waiver in certain situations: (1) when a client testifies concerning portions of the attorney-client communication[;] (2) when a client places the attorney-client relationship directly at issue[;] and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense. Sedco, 683 F.2d at 1206. "The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party '*relies*' on the privileged communication as a claim or defense or as an element of a claim or defense." Pritchard v. County of Erie, 546 F.3d 222 (2d Cir. 2008); see also United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998). "A waiver is to be predicated when the conduct places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." Sedco, 683 F.2d at 1206 (citation omitted).

The plaintiff argues Completely Kids has impliedly waived the attorney-client privilege because it is relying on an attorney consultation that occurred prior to Plaintiff's termination as part of its good faith defense. In summary, the evidence shows the

---

either argument, the court will first determine whether the attorney-client privilege has been waived.

following:  As long-standing counsel for Defendant, defense counsel understood Defendant's policies and severance packages applicable to both voluntary and involuntary employee terminations.  During the week when Plaintiff's termination was under consideration, Rizzo contacted counsel and sent documents or portions of documents to counsel prior to Plaintiff's termination.  Rizzo then advised Parker of the "advice from counsel" and "what counsel told [her] to do."  ([Filing No. 31-3 at CM/ECF p. 11, 23](#)).  As explained by Parker, Defendant contacted counsel "to make sure that we have followed the appropriate steps in regard to termination."  ([Filing No. 29-3 at CM/ECF p. 7](#)).  Parker did not testify that she relied on counsel in deciding whether to terminate Plaintiff.  And when Parker was asked if Plaintiff's medical condition had any bearing on her decision she answered, "No, it did not. It did not."  ([Filing No. 29-3 at CM/ECF p. 8](#)).

As to the good faith defense, Parker, as the 30(b)(6) representative for Completely kids, provided a long explanation for the basis of defendant's good faith defense, mentioning consultation with counsel in response to only one leading question.  [Filing No. 31-4 at CM/ECF p. 12](#)).

There is nothing of record stating Defendant relied on counsel in deciding whether to terminate, discriminate, or retaliate against Plaintiff.  At most, Defendant testified that it relied on defense counsel regarding the necessary procedural steps for termination under Defendant's employee policies and plans.  Plaintiff is not pursuing an action for breach of company policies.  As such, the record fails to show Defendant asserted reliance on an attorney's advice regarding any "element of a claim or defense" at issue.  Under the facts presented, and as to the claims alleged in this case, Defendant is not relying on the advice of counsel such that it would be unfair and inconsistent to permit Defendant to retain the privilege.  In accordance with the high protection afforded

6

attorney-client communications, and the caution to be exercised in finding any implied waiver,

IT IS ORDERED that Defendant's Motion for Protective Order, ([Filing No. 27](Filing No. 27)), is granted.

Dated this 15th day of January, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.